```
          IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF MARYLAND
```

|  |  |  |
|---|---|---|
| GODWIN EREMAH, et al. | : | |
| | : | |
| v. | : | Civil Action No. DKC 20-2069 |
| | : | |
| ASSURITY LIFE INSURANCE COMPANY, et al. | : | |

**MEMORANDUM OPINION**

Among the motions that are presently pending are (1) a motion by Defendant Assurity Life Insurance Company ("Assurity Life") to dismiss the Defendant Olumuyiwa A. Aladesuru ("Mr. Aladesuru") as a fraudulently joined Defendant, (ECF No. 13), and (2) a motion by Plaintiffs to remand, (ECF No. 15).  The issues have been briefed, but not clearly and sufficiently.  For the following reasons, the parties will be ordered to file supplemental memoranda to show cause why the court should not remand this case.

**I.   Background**

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiffs.  Godwin and Oluropo Eremah ("the Eremahs"), daughter-in-law and son of Mrs. Juliana Eremah ("Decedent"), are residents of Bowie in Prince George's County, Maryland.  On November 4, 2016, Assurity Life issued a life insurance policy ("the Policy") to the Eremahs on the life of Decedent with a "policy limit" of $ 35,000.

According to the complaint, "The policy was issued by a representative of the Defendant Assurity in Maryland Olumuyisa A. Aladesuru who is the second defendant."  Plaintiffs paid the premiums due under the policy and never defaulted.  On February 19, 2018, the Eremahs notified Assurity Life that Decedent had died and initiated a claim on the policy.  Defendant refused to make payments on this claim and denied the claim, alleging in part fraud on the part of Plaintiffs.

On April 20, 2020, the Eremahs brought state law claims against Assurity Life and Mr. Aladesuru in the Circuit Court for Prince George's County, Maryland alleging five causes of action: (1) Breach of Contract; (2) "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing"; (3) "Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing,"; (4) "Bad Faith"; and (5) Unfair Trade Practices. (ECF No. 2, at 3-5).  The suit sought $100,000 in "general damages" and $35,000 in "special damages," while also seeking punitive damages "to be determined at trial" and reasonable attorney's fees.

On July 15, 2020, Assurity Life filed a notice of removal claiming that Mr. Aladesuru (a Maryland citizen) was fraudulently joined, which meant complete diversity existed between the parties, and that the amount in controversy requirement was met. (ECF No. 1).  Assurity Life also responded to the original complaint, (ECF No. 2), with a motion to dismiss Mr. Aladesuru as

a fraudulently joined Defendant, (ECF No. 13). On August 28, 2020, Plaintiffs filed a motion to remand (ECF No. 15) which functioned as a responsive pleading to the Defendant's motion to dismiss Mr. Aladesuru from the original complaint for jurisdictional purposes. Finally, on September 11, 2020, Assurity Life filed an opposition to the motion to remand. (ECF No. 18).

**II. Analysis**

The motion to remand (and related motion to dismiss Mr. Aladesuru as fraudulently joined) must be addressed first as a matter of subject-matter jurisdiction. The fate of this motion hinges on addressing Defendant's motion to dismiss the original complaint against Mr. Aladesuru as a fraudulently joined Defendant.

Plaintiffs assert that "[t]his action was filed against the Defendant, Assurity Life Insurance Company and Mr. Olumuyiwa Aladesuru in the Prince Georges' [sic] County Circuit Court by [P]laintiffs" and that Mr. Aladesuru was properly joined as a citizen of Maryland. (ECF No. 15, at 4). Therefore, they argue, Mr. Aladesuru's consent should have been sought to remove the case under 28 U.S.C. § 1446(b)(2)(A). Defendant argues that Mr. Aladesuru was fraudulently joined "as there is no possibility Plaintiffs would be able to establish causes of action against him for breach of contract, tortious breach of the implied covenant of

good faith and fair dealing, bad faith, and unfair trade practices in state court." (ECF No. 13, at 2).

Plaintiffs argue that such a "conclusory statement that [Mr.] Aladesuru was fraudulently joined in the action . . . will not substitute for the requirement that Mr. Aladesuru consent to the removal." (ECF No. 15, at 5). Plaintiffs rely on *Mayo v. Bd. Of Educ.*, 713 F.3d 735, 742 (4th Cir. 2013), as an authority on seeking the defendant's consent and argue that merely alleging he was "fraudulently joined will not substitute for the requirement" that he consent to removal. (ECF No. 15, at 5). Assurity Life asserts in its opposition to the Motion to Remand, however, that the *Mayo* case did not address fraudulent joinder at all and so is entirely inapposite in this context. (ECF No. 18, at 3). Regardless, the Eremahs argue that Mr. Aladesuru's joinder in the case defeats the court's subject-matter jurisdiction as a non-diverse party. (ECF No. 15, at 6). In rebuttal, Assurity Life argues that the fraudulent joinder rule was expressly created to prevent this exact form of improper joinder from defeating diversity. (ECF No. 18, at 4).

"The 'fraudulent joinder' doctrine[1] 'permits removal when a non-diverse party is (or has been) a defendant in the case."

---

[1] This phrase is a term of art and "a bit misleading, insasmuch as the doctrine requires neither a showing of fraud . . . nor joinder." *Mayes v. Rapoport*, 198 F.3d 457, 461 n.8 (4th Cir. 1999).

4

*McGinty v. Player*, 396 F.Supp.2d 593, 597 (D.Md. 2005) (quoting *Mayes*, 198 F.3d at 461. The doctrine of fraudulent joinder allows a federal court to "'disregard, for jurisdiction purposes,' the citizenship of non-diverse defendants." *McFadden v. Fed. Nat'l Mortg. Ass'n*, 525 Fed.Appx. 223, 227 (4th Cir. 2013) (quoting *Mayes*, 198 F.3d at 461). Assurity Life rightly argues that, in practice, this means that the "unanimous consent of defendants" normally required is not applicable to defendants shown to be fraudulently joined. (ECF No. 18, at 3) (collecting numerous cases from this district).

A party is fraudulently joined when "there is no *possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015) (quoting *Hartley v. CSX Trans., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999)) (highlighting that this is a heavy burden: all issues of law and fact must be resolved in the plaintiff's favor, and the standard is even more favorable to a plaintiff than Fed.R.Civ.P. 12(b)(6)). Even a "glimmer of hope" will suffice. *Id.* (citing *Mayes*, 198 F.3d at 466).

If one cause of action in the original complaint shows even a slight possibility of success against Mr. Aladesuru, therefore, remand is required. Defendant first attacks the breach of contract claim. (ECF No. 2, First Cause of Action, ¶¶ 1-6). Here, it

5

relies heavily on *Cecilia Schwaber Tr. Two v. Hartford Accident & Indem. Co.*, 437 F.Supp.2d 485, 489-90 (D.Md. 2006), in arguing that the first count (breach of contract) "cannot be enforced by *or against* a person who is not party to it." (ECF No. 13-1, at 7) (citing *Cecilia Schwaber*, 437 F.Supp.2d at 489-90) (emphasis added). This argument, therefore, revolves solely around the fact that Mr. Aladesuru was not a party to the contract. But *Cecilia Schwaber Trust* involved warehouse insurance, and no agent was named as defendant. 437 F.Supp.2d at 489. Instead, the statement quoted by Defendant was made in reference to the five affiliates of the defendant Hartford Accident & Indemnity Company ("Hartford") (the insurer) who were also named in the complaint. That case does not answer whether an *agent*, although not a party to a contract, may be held liable for a breach of contract claim, and, if so, under what conditions.

Defendant also relies on several other cases that similarly do not answer this central question. *Fish v. Cincinnati Ins. Co.*, 451 F.Supp.3d 430 (D.Md. 2020), for example, involves insurance on a boat owned by the plaintiff. There, Judge Bennett declined to remand a case that included a claim against Defendant HMS Insurance Associates, Inc. ("HMS") (an insurance broker) because "Plaintiff has no right to relief against Defendant HMS." The *sole* claim against the brokerage as an agent was "that HMS negligently obtained insurance in Plaintiff's individual name rather than his

6

corporate name." The negligence claim against the agent was pled in the alternative, only "if no insurance contract is found to govern the dispute." This line of argument was deemed mooted because Cincinnati Insurance "admits that it entered into a contract of insurance with [the plaintiff]" and it did not "assert any defenses to coverage based on allegations that [the Plaintiff's] vessel may have been owned by an LLC, of which he was the sole member." Thus, the alternative negligence claim against the agent was not viable.

The *Fish* case does not appear, yet, to be congruent with this one. The record in *Fish* included an admission by the insurance company that a policy existed. Here, Assurity Life has not yet indicated whether it concedes that there was a policy on the decedent's life. Other than the fact that Defendant denied coverage due to "fraud," it is entirely unclear whether Defendant claims the policy itself was obtained or created fraudulently, or whether the Eremahs' subsequent claim itself is alleged to be fraudulent. (*See* ECF No. 2, Gen. Allegations, ¶ 6). Furthermore, *Fish* says nothing about whether a breach of contract claim could be brought against the agent.

Assurity Life also quotes from *Coots v. Allstate Life Ins. Co.*, 313 F.Supp.2d 539, 543-44 (D.Md. 2004), which does similarly involve a life insurance claim brought against an insurer and the insurance agency. *Coots* involved a conversion claim, not a breach

7

of contract claim.  For that claim, the plaintiff had to show that the agency had retained control over the insurance policy or its proceeds.  But the court found that the agency never had control and so wrote, "there is no *possibility* that plaintiff can establish a cause of action for conversion against [the] nondiverse [d]efendant."  *Id.* at 544.  The fact that Mr. Aladesuru "did not, and could not, exercise dominion and control over insurance proceeds," though relevant to a conversion claim, is entirely irrelevant to a breach of contract claim.  (ECF No. 13-1, at 8). Lastly, this section cites to *Crosby v. Crosby*, but by Assurity Life's own explanation, the case only shielded an insurer from liability because it had made a "good faith" effort to pay an individual who, by the terms of the policy, was the proper recipient of such funds.  785 F.Supp. 1227, 1228-29 (D.Md. 1992) (citing *Rogers v. Unionmutual Stock Life Ins. Co.*, 782 F.2d 1214 (4th Cir. 1986)).   ssurity Life, in not even admitting the legitimacy of the Policy, does not argue it has already discharged insurance proceeds here to some other, proper party.  This case has no bearing on the facts here.

Assurity Life purports to present caselaw subsequently addressing the issue of Mr. Aladesuru in his capacity as its alleged "representative" in issuing the alleged policy (ECF No. 13-1, at 8)(citing ECF No. 2, Parties, Jurisdiction and Venue, ¶¶ 4-5).  However, the cases it relies on are mostly generic contract

cases that do not involve a life insurance policy, let alone one challenged by its alleged third-party beneficiaries against an insurance agent. *Odyssey Travel Ctr. Inc. v. RO Cruises, Inc.*, 262 F.Supp.2d 618, 622, 624 (D.Md. 2003), for example, involves a travel agency suing a marketing agent for: breach of contract, promissory estoppel, negligent misrepresentation, intentional misrepresentation by concealment and constructive fraud. Assurity Life may be correct that Maryland law normally shields an agent who "fully discloses the identity of its principal" from contract liability. *Odyssey*, 262 F.Supp. at 625 (quoting *Hill v. Cty. Concrete Co., Inc.*, 108 Md.App. 527, 672 (1996)). But this again does not answer if this rule holds in the life insurance context. Assurity Life, in turn, relies on *Hill*, upon which *Odyssey* itself relies as an authority, but this is inapposite for the same reason: *Hill* is a generic contract case over an order for concrete. 108 Md.App. at 530.

The only case arguably on point is *Garcia v. United of Omaha Life Ins. Comp.*, No. 1:20-CV-00043-MSM-PAS, 2020 WL 3895918 at *2 (D.R.I. July 10, 2020). It dealt specifically with a life insurance claim against two agent defendants for breach of contract. The court wrote:

> The [agent] defendants argue that they cannot be liable for breach of the life insurance contract because they were not a party to that contract. The Court agrees. While the [agent] defendants were agents for Omaha, "an agent is

>not ordinarily liable for his principal's breach of contract ... and where an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of contract, unless there is clear and explicit evidence of the agent's intention to be bound." *Chrabaszcz v. Johnston Sch. Comm.*, 474 F. Supp. 2d 298, 312 (D.R.I. 2007) (internal citations omitted). *See also Alterio v. Biltmore Const. Corp.*, 119 R.I. 307, 315, 377 A.2d 237, 241 (1977) ("It has long been settled that an agent acting on behalf of a disclosed principal is not personally liable to a third party for acts performed within the scope of his authority."); Restatement (Second) of Agency § 328 (1958) ("An agent, by making a contract only on behalf of a competent disclosed ... principal whom he has power so to bind, does not thereby become liable for its nonperformance.").
>
>There is no allegation that the [agent] defendants were, or attempted to become, parties to the insurance contract between plaintiff's decedent and the disclosed principal, Omaha. As such, the plaintiff cannot sustain a breach of contract action against the [agent] defendants as a matter of law.
>
>In contrast, had the plaintiff alleged negligence against the [agent] defendants they might survive a motion to dismiss. They have not done so in this case.

*Id.* The case was decided under Rhode Island law, not Maryland law, and so is not controlling. It also expressly left open the possibility that some form of alleged negligence on an agent's part might save this cause of action. *Id.* at *3.

The Eremahs' motion to remand brings us no closer to an answer. It does not cite a single case on the issue of fraudulent

joinder and does not offer a single case on an agent's liability under a life insurance policy, let alone to named, third-party beneficiaries.

Neither party addresses a clear line of cases, from this district and Maryland state courts, to the effect that Maryland law does, in fact, recognize a breach of contract claim against an agent. In a recent case, Judge Bennett recognized this line of cases. *Colden v. West Coast Life Ins. Co.*, No. RDB-12-1691, 2013 WL 1164922 at *4 (D.Md. March 19, 2013). He explained:

> Although [the decedent] thought he had secured a life insurance policy, the [d]efendants denied the [p]laintiffs' death benefit claim after [the decedent] had died. Thus the [d]efendants allegedly breached the life insurance contract. In light of the fact that it is "generally accepted" under Maryland law that a contract claim may lie against an insurance agent in these circumstances, a suit against Mr. Crawford is proper. *See Int'l Bhd. Of Teamsters* [*v. Willis Corroon Corp. of Md.*], 802 A.2d [1050,] 1057-58 [Md. 2002]. Further, because Maryland law recognizes the doctrine of third-party beneficiary, *Parlette* [*v. Parlette*], 596 A.2d [665,] 669-70 [(Md. 1991)], these Plaintiffs — the named beneficiaries of [decedent's] insurance policy – may maintain this contract action.

*Id.*

In *Int'l Bhd. of Teamsters,* the Court of Appeals of Maryland stated:

> It is generally accepted . . . that, when an insurance broker is employed to obtain a policy that covers certain risks and the broker fails (1) to obtain a policy that

11

> covers those risks, and (2) to inform the employer that the policy does not cover the risk sought to be covered, an action may lie against the broker, either in contract or in tort.

369 Md. at 1057. In other words, where an agent's expertise is relied on to select a policy for a particular purpose, but the agent fails to do so, the agent may be liable. The *Parlette* case, referenced above, recognized that a third-party beneficiary could sue an agent even where the third-party beneficiary was not named in the contract for a breach of contract because the agent had made an oral promise to the plaintiff, upon which she relied, that she would be properly "designated beneficiary of the policy." 695 A.2d at 637-38.[2]

The foundation for *Int'l Teamsters* and *Colden* is found in an earlier case, *Jones v. Hyatt Ins. Agency, Inc.*, 356 Md. 639 (1999), which was relied upon in *Colden* and involved both breach of contract and tort claims brought against an insurance agent:

> Under the same public policy and contract law analyses underlying the third-party beneficiary cause of action against the insurer, *some jurisdictions have recognized a third-party beneficiary cause of action against an agent for breach of the contract to procure liability insurance*. See,

---

[2] Defendant does not contest the right of the Plaintiffs, as named beneficiaries on the policy, to sue in their own right. That principle is well established. See, *Jones v. Hyatt Ins. Agency*, 356 Md. 639, 647 & n.4 (1999); *Addi v. Corvias Mgmt.-Army, LLC.*, No. ELH-19-3253, 2020 WL 5076170 at *26 (D.Md. August 27, 2020) (citing *Milbourne, Conseco Servs., LLC*, 181 F.Supp.2d 466, 468 (D.Md. 2020)).

12

> *e.g., Gothberg v. Nemerovski,* 58 Ill.App.2d 372, 385–386, 208 N.E.2d 12, 20 (1965) ("Because of the peculiar significance of automobile liability insurance as well as the provisions of the policy contemplated by the parties ...," the "plaintiffs can be considered third party beneficiaries of the contract to procure insurance entered into between [the tortfeasor and the agent], that is, they had a sufficient interest in such a contract to bring suit directly for its breach. In entering into this contract to procure insurance, it is a fair and reasonable inference that [the tortfeasor was] contemplating possible injury to unidentified third parties, and the insurance coverage was for the direct benefit of third parties who might be injured through [his] negligence"); *Flattery v. Gregory,* 397 Mass. 143, 150, 151, 489 N.E.2d 1257, 1262 (1986) (state law "displays the Legislature's view that injured highway travelers are intended beneficiaries of ... automobile liability insurance"; moreover, "[t]he parties to the insurance policy, or, as in this case, to a contract to procure such a policy, intend the injured third-party ... to benefit from their contract.")

*Jones*, 356 Md. at 647 n.4 (emphasis added). Despite recognizing such a right under a breach of contract claim, the court went on to clarify that: "[u]nder Maryland law, an insurer which mistakenly denies coverage does not breach a tort duty owed either to the insured or to third-party claimants such as the Joneses. Instead, the duty owed to both the insured and to a third-party claimant is entirely contractual." *Id.* at 655.

Here, the original complaint leaves the specific role of Mr. Aladesuru in securing the policy for the Eremahs entirely unclear.

At this stage, however, all questions of fact and law must be resolved in Plaintiffs' favor because, if there is a mere glimmer of hope that they can prevail against Mr. Aladesuru on their breach of contract claim, remand would be necessary.  The Defendant has not carried the heavy burden necessary to find that Mr. Aladesuru was fraudulently joined in this claim.

### III. Conclusion

The parties will be directed to file supplemental memoranda in fourteen days (14) to show cause why this complaint should not be remanded to state court in light of the cases discussed above: chiefly *Colden* and the Maryland cases on which it relies.  In particular, the parties must discuss this caselaw, with all factual and legal ambiguities and questions resolved in Plaintiffs' favor.

                                            /s/
                                DEBORAH K. CHASANOW
                                United States District Judge