IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GODWIN EREMAH, et al.                   :

                                        :

    v.                                  :   Civil Action No. DKC 20-2069

                                        :

ASSURITY LIFE INSURANCE COMPANY,
et al.                                  :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case arising out of a life insurance dispute are (1) a motion by Defendant Assurity Life Insurance Company ("Assurity Life") to dismiss the Plaintiffs' original complaint for failure to state a claim, (ECF No. 7), (2) a motion by Plaintiffs for leave to file a first amended complaint, (ECF No. 10), (3) a motion by Defendant Assurity Life to dismiss Defendant Olumuyiwa A. Aladesuru ("Mr. Aladesuru") from the original complaint as a fraudulently joined Defendant, (ECF No. 13), (4) a motion by Assurity Life to dismiss the first amended complaint for failure to state a claim and to dismiss Mr. Aladesuru as a fraudulently joined Defendant, (ECF No. 14), and (5) a motion by Plaintiffs to remand, (ECF No. 15).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss Mr. Aledesuru will be granted, the motion to remand will be denied, the motion for leave to amend will be

granted (thus mooting the original motion to dismiss), and the motion to dismiss the amended complaint will be denied in part and granted in part.

I.  **Background**

The previous opinion filed October 20, 2020 sets out the relevant background as it relates to Plaintiffs' remand motion and Defendant's attempts to justify removal. (ECF No. 20); *Eremah v. Assurity Life Ins. Co.*, No. DKC 20-2069, 2020 WL 6154871, at *1 (D.Md. October 20, 2020).

In addition to the motions discussed therein, on July 21, 2020, Assurity Life also filed a motion to dismiss the original complaint for failure to state a claim. (ECF No. 7). Plaintiffs Godwin and Oluropo Eremah ("the Eremahs") responded on August 4, 2020, (ECF No. 9) and also filed a motion for leave to file an amended complaint with Defendant's consent. (ECF No. 10).[1] The amended complaint alleges only two causes of action: (1) Breach of Contract and (2) Declaratory Judgment. (ECF No. 10-1). The damages sought for both actions are the $35,000 alleged to be owed to them under the insurance policy in question ("the Policy").

---

[1] The motion for leave to file the amended complaint is, in reality, unnecessary for two reasons. A party may amend a complaint once as a matter of course within 21 days of service of a motion under Rule 12(b) and at any time with the opposing party's written consent. Fed.R.Civ.P. 15(a)(1)(B),(2). Assurity Life filed a motion to dismiss under 12(b)(6) on July 21, 2020. The motion for leave to file was filed on August 4, 2020. Nevertheless, it will be granted.

Even though this "proposed" amended complaint was already
consented to and thus superseded the original complaint, Assurity
Life filed a reply to its motion to dismiss the original complaint
on August 18, (ECF No. 12) and responded to the amended complaint
with a combined motion to dismiss for failure to state a claim and
to dismiss Mr. Aladesuru. (ECF No. 14).  On August 28, 2020, in
addition to the motion to remand, Plaintiffs also filed a response
to the motion to dismiss their amended complaint. (ECF No. 16).
On September 11, 2020, filed a reply to its motion to dismiss the
amended complaint. (ECF No. 19).

    After reviewing the motion papers related to the original
compliant, the court directed the parties to file additional
position papers to show cause why remand was not proper. (ECF No.
21).  That order, and its underlying opinion, highlighted Judge
Bennett's statements in *Colden v. West Coast Life Ins. Co.*, No.
RDB-12-1691, 2013 WL 1164922 (D.Md. March 19, 2013), unaddressed
by either party, that relied on two Maryland Court of Appeals cases
recognizing a right under Maryland law for a third-party
beneficiary to a life insurance contract to sue an insurance agent
under a breach of contract theory. *See Colden*, 2013 WL 1164922,
at *4-6 (citing *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of
Md.*, 802 A.2d 1050, 1057-58 (Md. 2002) and *Jones v. Hyatt Ins.
Agency*, 741 A.2d 1099 (Md. 1999)).  The Eremahs filed their

3

response on November 2, 2020, (ECF No. 22), and Assurity Life filed
its response on November 3, 2020.  (ECF No. 23).

## II.  Motion to Remand

In light of the supplemental memoranda submitted by the
parties, neither the joinder of Mr. Aladesuru, nor the Plaintiffs'
amendment of their complaint to drop claims and reduce the damages
sought, defeats diversity jurisdiction in this case.  The motion
to remand will be denied.

### A.  Standard of Review

28 U.S.C. § 1441 allows defendants to remove an action
"brought in a State court of which the district courts of the
United States have original jurisdiction."  Pursuant to 28 U.S.C.
§ 1332(a)(1), district courts have original jurisdiction "of all
civil actions where the matter in controversy exceeds the sum or
value of $75,000, exclusive of interests and costs, and is between
... citizens of different States."

Defects may be merely procedural or may raise concerns as to
the existence of subject matter jurisdiction.  Deficiencies in the
jurisdictional allegations in a notice of removal are procedural
errors and may be challenged by motion within thirty days of
removal.  *Doe v. Blair*, 819 F.3d 64, 68 (4th Cir. 2016); *Ellenburg
v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 197-98 (4th Cir.
2008).  Jurisdictional allegations in a notice of removal need not
"meet a higher pleading standard than the one imposed on a

4

plaintiff in drafting an initial complaint." *Ellenburg*, 519 F.3d at 200 ("[J]ust as a plaintiff's complaint sufficiently establishes diversity jurisdiction if it alleges that the parties are of diverse citizenship and that the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332, so too does a removing party's notice of removal sufficiently establish jurisdictional grounds for removal by making jurisdictional allegations in the same manner."); *Cunningham v. Twin City Fire Ins. Co.*, 669 F.Supp.2d 624, 627 (D.Md. 2009) ("Where a defendant seeks to remove a case to federal court, the defendant must simply allege subject matter jurisdiction in his notice of removal."). Concerns as to the absence of subject matter jurisdiction may be raised at any time by the court or parties, and a district court must remand any case in which it lacks subject matter jurisdiction. 28 U.S.C. § 1447(c); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

In considering a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court." *Richardson v. Philip Morris Inc.*, 950 F.Supp. 700, 702 (D.Md. 1997) (citations omitted). This standard reflects the reluctance of federal courts "to interfere with matters properly before a state court." *Id.* at 701. When opposing a motion to remand, the party asserting subject matter jurisdiction "bears the burden of proof, by a preponderance of the

5

evidence, to show the parties' citizenship to be diverse." *Zoroastrian Ctr. and Darb-E-Mehr of Metropolitan Wash., D.C. v. Rustam Guiv Found. of N.Y.*, 822 F.3d 739, 748 (4th Cir. 2016) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 138, 151 (4th Cir. 1994) ("The burden of establishing federal jurisdiction is placed upon the party seeking removal.")).

**B. Analysis**

**1. Fraudulent Joinder**

The presence of Mr. Aladesuru will not defeat removal if he was "fraudulently joined," meaning that there is no possibility that Plaintiffs can establish a cause of action against him. As noted before, this is a heavy burden on the removing party. A party asserting fraudulent joinder must establish more than that a complaint fails to state a claim as to **all** defendants. A defense, such as failure to state a claim, that would apply equally to all defendants cannot serve to show fraudulent joinder. This court has explained elsewhere that:

> [A]nother circuit has recently articulated a "common defenses" rule, holding in a closely divided decision that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant. In such a situation, the entire suit must be remanded to state court." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 (5th Cir. 2004) (en banc). That court's majority opinion explained that when,

6

on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state law would allow the plaintiff to recover against the in-state defendant necessarily compels the same result for the nonresident defendant, there is no improper joinder; there is only a lawsuit lacking in merit. In such cases, it makes little sense to single out the in-state defendants as "sham" defendants and call their joinder improper. In such circumstances, the allegation of improper joinder is actually an attack on the merits of plaintiff's case as such—an allegation that, as phrased by the Supreme Court in *Chesapeake & O.R. Co. v. Cockrell*, "the plaintiff's case [is] ill founded as to all the defendants." *Id.* at 574. Courts in at least two other circuits are in agreement. *See Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3ᵈ Cir.1990) ("Informed by *Cockrell*, we hold that where there are colorable claims or defenses asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses."); *In re New Eng. Mut. Life Ins. Co. Sales Practices Litig.*, 324 F.Supp.2d 288, 298-304 (D.Mass. 2004). *But see Ritchey*, 139 F.3d at 1320 (9ᵗʰ Cir. 1998) (recognizing that "it is, perhaps, slightly peculiar to speak of [non-diverse defendants] as sham defendants because the statute of limitations bars a claim against them, when that would seem to lead to an argument that [the diverse defendant] itself is a sham defendant because the statute of limitations has also run against it," but nevertheless finding fraudulent joinder).

*Riverdale Baptist Church v. Certainteed Corp.*, 349 F.Supp.2d 943, 951 (D.Md. 2004). If, however, a claim is entirely without basis, it may be disregarded. *Johnson*, 781 F.3d 693, 704 (4ᵗʰ Cir. 2015) (finding no possibility of success on a state claim that was

preempted by federal law and thus could not succeed as to any defendant).  Of course, the absence of specific allegations of wrongdoing by the non-diverse defendant may also indicate fraudulent joinder.  *See, e.g., Sincere v. BAC Home Loans Servicing, LP.*, No. 3:11-cv-00038, 2011 WL 6888671, at *7 (W.D.Va. Dec. 30, 2011).

In the original complaint, both the "General Allegations" and causes of action incorporate and re-assert all the preceding allegations, including those in the introductory section entitled "Parties, Jurisdiction and Venue."  (ECF No. 2).  The first claim of breach of contract incorporated the allegations that "the subject Insurance Policy was issued by the Defendant Assurity" and that "[t]he policy was issued by a *representative* of the Defendant Assurity."  (ECF No. 2, Parties, Jurisdiction and Venue, ¶¶ 4-5) (emphasis added).[2]  Plaintiffs say "Defendants," in turn, violated that policy by "refusing to properly compensate" them which gives rise to their breach of contract claim.  (*Id.*, First Cause of Action, ¶ 4).  But Assurity Life correctly highlights the fact that "they make no specific allegations against [Mr. Aledesuro] while acknowledging the Policy was issued by Assurity Life," nor

---

[2] Note that the numbered paragraphs confusingly start over with a "1" in each sub-section.  This memorandum will mention which sub-section is being discussed where necessary.

is he alleged to be an actual party to the Policy. (ECF No. 13-1, at 6-7).

Prompted by the recent order to show cause, Assurity Life now admits that it issued the Policy to Decedent, as the insured, and that Mr. Aladesuru was, indeed, the "writing agent for the Policy." Plaintiffs Mr. Eremah and Ms. Eremah were designed "sole primary" and "designated contingent" beneficiaries, respectively. (ECF No. 23, at 3).[3]

One condition to payout on this policy, however, was a proper "proof of death." When Assurity Life received notice of Decedent's "alleged death," they launched a "routine contestable review" to determine whether payout was proper. They claim they requested additional documentation from Mr. Eremah as to Decedent's death, including, among other things, a certified death certificate that included a "raised seal and cause of death." Assurity Life says they were told that Decedent's cause of death was a car accident. Plaintiffs failed to provide an "original/certified Nigerian death certificate," however. (*Id.*).

Attempting to learn more, Assurity Life hired "independent investigators" to review the legitimacy of the claim and Decedent's

---

[3] Defendant correctly points out that in determining whether joinder is fraudulent, "the court is not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder by any means available.'" (ECF No. 23, at 3 n.2) (citing *Mayes v. Rapoport*, 198 F.3d 457, 464 (4th Cir. 1999)).

death.    The   investigation   revealed   "discrepancies   and
inaccuracies" in the information that Mr. Eremah provided Assurity
Life, including the alleged "fabrication of the signature and stamp
in the Death Report to Coroner by the Nigerian police and the lack
of notice of the alleged death from the United States Consulate in
Nigeria."   The Social Security Administration, it reports, was
also  unable  to  find  information  demonstrating  Decedent's  death.
Based on all these findings, Assurity Life decided to deny the
claim because of the Eremahs' failure to provide proof of death
and  in  allegedly,  fraudulently  attempting  to  recover  death
benefits   on   the   Policy.    Although   Plaintiffs'   counsel   has
subsequently submitted more documents to Defendant on this issue,
Assurity Life has yet to receive "an authentic death certificate
and   coroner's   report   nor   information   regarding   any   medical
treatment provided to Decedent in Nigeria."   Filling the former
gaps in the record, Assurity Life asserts "Mr. Aladesuru played no
role in the decision of Assurity Life to deny Mr. Eremah's claims
for benefits."  (*Id.*, at 4).

Based on the newly elucidated factual allegations, Plaintiffs
cannot assert a claim against the agent for breach of contract.
Because the insurance contract was issued, there can be no claim
for breach of a contract to procure insurance coverage.   Rather,
it is now clarified that Plaintiffs' claim is for breach from the

failure to pay out the benefits allegedly due because of the death of the decedent.

Assurity Life successfully distinguishes each of the cases cited in the prior opinion in which liability for breach of contract could apply to a life insurance agent.  In *Colden*, for instance, a breach of contract claim was plausible as the record showed the "alleged wrongdoing of the agent in *procuring* the life insurance policy" and that this improper application was the insurer's stated grounds for denying a claim.  (ECF No. 23, at 5) (citing *Colden*, 2013 WL 1163922, at *2).  Defendant is right to point to this key factual difference, particularly as Judge Bennett was careful to state that "under Maryland law [] a contract claim may lie against an insurance agent *in these circumstances*." *Colden*, 2013 WL 1163922, at *4.  Assurity Life is also correct to note that *Jones*, upon which *Colden* relies, also involved an action brought against an agent in *failing to provide* the insurance covered requested by the insured.  (ECF No. 23, at 6) (citing *Jones*, 356 Md. at 741).  Similarly, *Int'l Bhd of Teamsters* was careful to state that a tort or contract claim can only lie against an insurance agent when that agent not only fails to provide the sought after coverage, *but also* fails to so inform his or her employer of this fact.  There, moreover, the agent was noted to have "held itself out . . . as possessing special expertise,

knowledge, and skill." (*Id.*, at 5-6) (citing *Int'l Bhd. of Teamsters*, 802 A.2d at 1051, 1057-58).

Plaintiffs' action involves the alleged failure to pay out the proceeds of the Policy to them, not any claim that Mr. Aladesuru either "improperly or inaccurately prepared the policy application" or procured the wrong kind of policy on their behalf. Moreover, Assurity Life asserts that Mr. Aladesuru was terminated as an employee before it even decided to deny the Eremahs' claim. (*Id.*). Like in *Fish v. Cincinnati Ins. Co.*, 451 F.Supp.3d 430 (D.Md. 2020), Defendant rightly points out these newly disclosed facts "extinguish any 'glimmer of hope' that Plaintiffs may have had in pursuing a breach of contract claim against Mr. Aladesuru." As in that case, Assurity Life "does not deny the original issuance or existence of the Policy." Instead it challenges only the "legitimacy" of the Eremahs' claim that Decedent is, in fact, dead. Following the same logic as *Fish*, the record now establishes that there is no possibility that the Eremahs will be able to recover against Mr. Aladesuru based on the breach of contract claim in their original complaint. (*Id.* at 10-11).

The other claims in the original complaint either lack any factual support for the addition of Mr. Aladesuru (other than referring generally to "Defendants"), or are not actual causes of action under Maryland law, or both.

The second cause of action is the "Contractual Breach of the Implied Covenant of Good Faith and Fair Dealing." Assurity Life argues that this claim is brought only "exclusively against Assurity Life" and that Mr. Aladesuru is not involved in any of the alleged conduct. (ECF No. 13, at 2 n.2) (citing ECF No. 2, Second Cause of Action, ¶¶ 1-7) (referring to "Defendants' breach" only once but otherwise referring to "Defendant Assurity" and "Defendant"). Defendant points out that, even if the claim includes him, Maryland law does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing.[4] While this bars the claim against all Defendants, and not just Mr. Aladesuru, there is a difference between failure to state a claim and no cause of action at all. If Plaintiffs intended to include him in this claim, he would be fraudulently joined.

Because the third cause of action, "Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing," is also predicated on the covenant of good faith and fair dealing as an independent cause of action, it also fails to establish a cause of action at all. Moreover, like in the second count, Assurity Life

---

[4] Although Assurity Life cites to no caselaw for this point, it is correct that Maryland recognizes no such independent cause of action. *White Marlin Open, Inc. v. Heasley*, 262 F.Supp.3d 228, 256 (D.Md. 2017) (citing *Mount Vernon Props., LLC v. Branch Banking & Tr. Co.*, 170 Md.App. 457, 472 (2006)).

points out that Mr. Aladesuru's inclusion here is relegated solely
to two references to "Defendants" with no specific mention of Mr.
Aladesuru at all.  (ECF No. 13-1, at 9).   Assurity Life is right
to say there is "no glimmer of hope" that Plaintiffs can recover
against Mr. Aladesuru on this claim.    (ECF No. 13-1, at 10)
(quoting *Hartley v. CSX Transp. Inc.*, 187 F.3d 422, 426 (4th Cir.
1999)).  He is fraudulently joined here as well.

The fourth cause of action for "Bad Faith" fails to allege
*any* specific conduct by Mr. Aladesuru except that he is again
included under a generic reference to the "acts and omissions of
Defendants" and "Defendants' bad faith" by which "Plaintiffs
sustained damage in excess of the policy limits." (ECF No. 2,
Fourth Cause of Action, ¶¶ 2-4).   A claim by the insured against
the insurer for "improperly delayed payment of the claim" is "a
first party claim" under Maryland Law.  *Schaefer v. Aetna Life &
Cas. Co.*, 910 F.Supp. 1095, 1100 (D.Md. 1996) (citing *Johnson v.
Fed. Kemper Ins. Co.*, 74 Md.App. 243 (1988)) ("[P]laintiff asserts
only that [the insurer] failed promptly to settle his insurance
claim – and that in and of itself is not tortious."). But, like
with the two previous causes of action, Assurity Life points out
that "Maryland does not recognize a[n] . . . action against an
insurer for bad faith failure to pay a first party insurance
claim." (ECF No. 13-1, at 11) (citing *Schaefer*, 910 F.Supp at
1099; *Johnson*, 74 Md.App. at 247-48; *Gladney v. Am. W. Home Ins.*

*Co.*, No. ELH-15-1559, 2016 WL 1366029 (D.Md. Apr. 6, 2016) (collecting other Maryland cases)).[5]  For his inclusion in a non-existent cause of action, Mr. Aladesuru is fraudulently joined.

The final claim is "Unfair Trade Practices."  The complaint here refers to Plaintiffs' entitlement to general and punitive damages "as a result of Defendants' unfair trade practices." (ECF No. 2, Fifth Cause of Action, ¶ 4-5).  Assurity Life properly construes this catch-all term as a claim under Maryland's Unfair Claim Settlement Practices Act.  Md.Code.Ann. Ins. §§ 27-301 *et seq*.[6]  Even in accepting this bald legal conclusion that the "Defendants" actions were "unfair trade practices," the other allegations in this section seem to imply that only Assurity Life was involved.  Assurity Life highlights how Plaintiffs allege that "*Defendant Assurity* has engaged in unfair trade practices, including *Defendant's* failure to properly settle Plaintiffs' claim." (ECF No. 13-1, at 12) (citing ECF No. 2, Fifth Cause of

---

[5] *Schaefer* itself establishes that a bad faith negligence claim against an insurer by a third-party beneficiary is still considered a "first party" claim as the beneficiary "stands in the shoes of the insured."  910 F.Supp. at 1100 (citing *King v. Gov. Emps. Ins. Co.*, 843 F.Supp. 56, 57 (D.Md. 1993).

[6] As such, Assurity Life also argues that this Act only provides an administrative remedy and not a private right of action.  Whether this is an assertion that the claim fails to state a claim or instead alleges no cause of action at all, need not be addressed.  The claim will be dismissed in its failure to allege sufficient facts to establish Mr. Aladesuru carried out an "unfair trade" practice of any kind.

Action, ¶ 2) (emphasis added by Defendant).  More importantly, the only unfair trade practice alleged is the failure to settle a claim.  That has nothing to do with the initiation of the policy by Mr. Aladesuru.  The lack of allegations concerning him in this cause of action justifies finding fraudulent joinder.  The motion to dismiss Mr. Aladesuru as a fraudulently joined defendant in Plaintiffs' original complaint will be granted.

### 2.  The Amount in Controversy

Plaintiffs initially asserted in their opposition to Defendant's motion to dismiss Plaintiffs' first amended complaint that the amount in controversy in this case is "below the jurisdictional limit" in that damages in the amended complaint are now "based [solely] on contract [sic]."  (ECF No. 16, at 9).[7] Their motion for remand itself has seemingly abandoned that line of argument.  (*See generally* ECF No. 15).  Nonetheless, Defendant re-asserts in its opposition to the remand motion that the amount in controversy is properly determined at the time of removal.  (ECF No. 18, at 5); (*see also* ECF No. 14-1, at 16 n.7) (collecting cases and citing, *inter alia*, *Porsche Cars N. Am. v. Porsche.net*, 302 F.3d 248, 255-56 (4th Cir. 2002) ("a court determines the existence of diversity jurisdiction at the time the action is filed,

---

[7] Plaintiffs argue this in their opposition to Assurity Life's motion to dismiss their amended complaint, but it is considered herein as responsive to the diversity issue.

regardless of later changes in originally crucial facts such as the parties' citizenship or the amount in controversy") (internal quotation marks omitted)); *see also St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938) ("Thus events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.").[8]

Regardless of whether Plaintiffs have abandoned seeking remand on this ground, the original state court complaint explicitly seeks, *inter alia*, $100,000 in general damages both for various contract claims as well as an unfair trade practice claim. (ECF No. 2, prayer for judgment, ¶ 1). Consequently, they cannot

---

[8] Such cases do not expressly address the case, as here, where the reduction in requested damages through amendment comes with the wholesale abandonment of claims. Nonetheless, in the federal question context it has been said that "[t]he rule that a plaintiff cannot oust removal jurisdiction by voluntarily amending the complaint to drop all federal questions serves the salutary purpose of preventing the plaintiff from being able to destroy the jurisdictional choice that Congress intended to afford a defendant in the removal statute." *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 507 (5th Cir. 1985). Only where a plaintiff voluntarily *adds* a federal claim to an amended complaint post-removal is he "bound to remain there [in federal court]." *Moffitt v. Resid. Funding Co., LLC*, 604 F.3d 156, 159 (4th Cir. 2010) (quoting *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 185 (7th Cir. 1984)). The same logic holds that Plaintiff should not be able to destroy diversity jurisdiction post-removal simply by abandoning a claim to reduce the damages sought below the jurisdictional amount as to do so would rob the defendant of its power properly to remove where the basis for diversity jurisdiction exists at the time of (original) filing.

deprive Defendant of its right properly to remove the case to federal court by amending the damages they seek post-removal.  The amount in controversy requirement is met and the motion to remand will be denied.

## III.  Motion to Dismiss for Failure to State a Claim

Assurity Life argues that the allegations set out in the amended complaint fail to state a breach of contract claim or properly seek declaratory judgment.  (ECF No. 14-1, at 2-3).

### A.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  But "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 n.3 (2007).

In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

**B. Analysis**

**1. Breach of Contract Claim**

Assurity Life devotes a large portion of its motion to dismiss for failure to state a claim around the argument that the "First Amended Complaint does not provide 'the *existence and terms* of the policy' to support their claim and does not provide any supporting documentation, such as a copy of the Policy at issue." (ECF No. 14-1, at 10) (citing *Pruitt v. Wells Fargo Bank, N.A.*, No. DKC 15-

1308, 2015 WL 9490234, at *10-11 (D.Md. Dec. 30, 2015) (explaining the complaint was "devoid of specific timeframes or precise contractual provisions" in dismissing a breach of contract claim)).  Defendant adds in a footnote that "[e]ven if the Court reviews the Policy in conjunction with the First Amended Complaint, Plaintiffs' claim for breach of contract remains insufficiently pled."  (ECF No. 14-1, at 10 n.3).  It further contends that the amended complaint "does not allege, or even intimate, specific facts showing how or why the alleged breach of Assurity Life to pay benefits under the Policy damaged the plaintiffs."  (ECF No. 14-1, at 11).  Plaintiffs, it argues, point to no "language in the Policy that obligates Assurity Life to pay benefits to any person who pays premiums."  (ECF No. 14-1, at 11).  But Assurity Life does not explain why the Policy itself does not provide these essential terms.  The policy which was referenced (and relied on) in the Amended Complaint was attached to the opposition to the Defendant's motion to dismiss the original complaint.  (ECF No. 9-1).  It is properly considered on a motion to dismiss.[9]

---

[9] This is particularly true now that Assurity Life has admitted that the Policy was properly issued to Decedent and her intended beneficiaries in its supplemental memorandum.  (ECF No. 23, at 3).

Assurity Life highlights a succinct six-part test for analyzing breach of life insurance contract claims under Maryland law:

> To state a cause of action for breach of a life insurance contract, a petition must allege: (1) the existence and terms of the policy; (2) the right or interest entitling the plaintiff to sue; (3) performance or waiver of conditions precedent; (4) death of the insured; (5) the amount of the insurance; and (6) the fact that payment is due, but has not been made.

*Villenouze v. Primerica Life Ins. Co.*, No. RDB-11-0099, 2011 WL 4479699, at *3 (D.Md. Sept. 26, 2011) (citing *Milbourne v. Conseco Servs., LLC,* 181 F.Supp.2d 466, 469 (D.Md. 2020)).   The Eremahs adopts this same test in their opposition, but without citing to caselaw. (ECF No. 16, at 4-5).

Plaintiffs correctly assert they have pled *all* the elements required for a breach of an insurance policy claim under Maryland Law. (*Id.*).   The amended complaint itself makes clear there was a policy was issued on November 4, 2016 in Maryland for $35,000 on the life of Juliana Eremah, the mother and mother-in-law of Plaintiffs. (ECF No. 10-2, Gen. Allegations, ¶¶ 1, 2) (citing ECF No. 9-1).   As discussed, Assurity Life admits this Policy was properly issued to Decedent as the insured with Plaintiffs named as beneficiaries.   Plaintiffs allege the Policy entitled them to certain "death benefits" upon Mrs. Juliana Eremah's death. (*Id.*, ¶ 7).   Such an allegation is supported by the policy itself, as

put forth by Plaintiffs, which shows Plaintiff Godwin Eremah listed as "Son" of the insured and a "Primary Beneficiary" owed a "Share %" of "100". Similarly, Plaintiff Oluropo Eremah is listed as "Daughter-in-Law" and a "Contingent Beneficiary" owed a "Share %" of "50." (ECF No. 9-1, at 14). Mrs. Juliana Eremah was reported to have died on February 19, 2018, and it is the Eremahs' belief that a medical doctor has certified this fact and been interviewed by Assurity. (ECF No. 10-2, Gen. Allegations, ¶ 4-5). Plaintiffs, through their attorneys, sent letters to Defendant "to honor its obligations under the policy." (*Id.*, ¶ 7). Despite this, Assurity Life refused to make payments to Plaintiffs "as required under the Insurance Policy," (*Id.*, ¶ 8), which constituted a breach of its duties under the contract and deprived them of benefits to which they were entitled. (*Id.*, ¶¶ 10, 12-14). All six elements of a breach of insurance policy claim are clearly present in the amended complaint.

Plaintiffs are right to question Defendant's characterization of these allegations. (ECF No. 16, at 5). Defendant's frame the complaint as one baldly asserting a right to sue based on the payment of premiums. (ECF No. 14-1, at 11). But looked at in the light most favorable to Plaintiffs, it is fairly evident that their allegation that "plaintiffs paid the premiums called for under the policy and did not default on payment at any time," (ECF No. 10-2, Gen. Allegations, ¶ 3) is meant simply to show that

Plaintiffs met all the conditions necessary to receiving a payout at the death of the insured, not that this is the sole basis of their breach of contract claim.  This is made clear in a later paragraph of the amended complaint: "Plaintiffs performed under the agreement by paying the premiums called for in the contract." (ECF No. 10-1, Breach of Contract, ¶ 12).  Plaintiffs also reiterate in their opposition to this motion that they "complied with all conditions of the policy." (ECF No. 16, at 5).  It is evident, therefore, that Plaintiffs are not seeking damages for the breach of a duty owed to them simply in having paid premiums as Defendant asserts.

Regardless, Defendant argues Plaintiffs' complaint is deficient because they do not state sufficient facts to establish that they "were, at the time of the Insured's death, each primary beneficiaries [sic] under the Policy." (ECF No. 14-1, at 11) (citing ECF No. 9-1, at 6).  It similarly questions the Eremahs' failure to submit actual "proof of death of the Insured," beyond mere notification of death and initiation of a claim.[10] (ECF No. 14-1, at 12 & n.6).  But these arguments ask for a ruling on the merits of whether Defendant's failure to pay under the Policy constituted a breach as per its terms; such consideration is not proper at this stage.  The allegations set forth by the complaint

---

[10] This failure is discussed more fully in the supplemental memorandum by Defendant. (ECF No. 23, at 3).

allege at least a plausible claim for a breach of the Life
Insurance Policy to which they were named beneficiaries. Assurity
Life's motion to dismiss this claim for failure to state a claim
will be denied.

### 2. Declaratory Judgment

Defendant argues that Plaintiffs' sought-after declaratory
judgment is duplicative of their breach of contract claim and that
they fail to meet the showing required of a party seeking a
declaratory judgment under federal law. (ECF No. 14-1, at 13-14).

Where a party brings a breach of contract claim directly,
there is no need for a declaratory judgment action. *Iqvia Inc. v.
Khan*, No. DKC 19-3462, 2020 WL 2395602, at *2 n.1 (D.Md. May 12,
2020) (citing *John M. Floyd & Assocs. v. Howard Bank,* No. RBD-18-
2887, 2019 WL 1755968, at *4 (D.Md. April 18, 2019) (finding
plaintiff's request for the court "to declare that [the defendant]
is in breach of the [] Agreement and owes monetary damages to [the
plaintiff], [is] in essence, asking this Court to decide on the
breach of contract issue")). This portion of the amended complaint
asks the court to rule that "Defendant Assurity has not met its
obligation under the contract." (ECF No. 10-1, Second Cause of
Action: Declaratory Judgement, ¶ 5). In particular, it argues the
plaintiffs are "beneficiaries" under the contract with Assurity.
It is "valid and enforceable" and calls for the payment of "Thirty-
Five Thousand Dollars to the plaintiff on the death of the insured

24

Juliana Eremah" that is owed to Plaintiffs in that they "performed . . . by paying all the premiums." (*Id.*, ¶¶ 2-4). In that sense, the claim is entirely duplicitous of the breach of contract claim. Whether Plaintiffs met the relevant standard for bringing a claim for declaratory judgment need not be decided. The motion to dismiss Plaintiffs' second cause of action in their amended complaint will be granted.

## IV.  Conclusion

For the foregoing reasons, the motion to dismiss Mr. Aladesuru as a fraudulently joined defendant will be granted, Plaintiffs' motion to remand will be denied, the motion for leave to amend will be granted, and the motion to dismiss the amended complaint filed by Defendant will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
